**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Mar 1, 2019

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ERIN FISHER; RICHARD FISHER; AND ERIN FISHER,
AS NEXT FRIEND AND NATURAL MOTHER
OF MINOR CHILD, A.C.                                                    PLAINTIFFS

v.                                   NO. ___2:19cv2034___

JASON COOK; TARA KATUK MAC LEAN SWEENEY,
IN HER OFFICIAL CAPACITY AS ACTING ASSISTANT
SECRETARY–INDIAN AFFAIRS; BUREAU OF INDIAN
AFFAIRS; DAVID BERNHARDT, IN HIS OFFICIAL
CAPACITY AS ACTING SECRETARY OF THE INTERIOR;
AND CHEROKEE NATION OF OKLAHOMA,
A FEDERALLY– RECOGNIZED INDIAN TRIBE                    DEFENDANTS

## <u>COMPLAINT</u>

Erin Fisher; Richard Fisher; and Erin Fisher, as Next Friend and Natural Mother of Minor

Child, A.C. (collectively "Plaintiffs"), state as follows:

1.      This suit is filed by a nine-year-old boy, A.C., his biological mother Erin Fisher,

and his stepfather Richard Fisher, against his biological father, Jason Cook.

2.      Plaintiffs want to terminate Defendant's parental rights in Arkansas state court, and

they want to obtain legal recognition and permanency for their family by having an Arkansas state

court grant A.C.'s adoption by his stepfather Richard Fisher, the only father A.C. has ever known.

They do not and will not seek termination of parental rights or adoption in federal court.

3.      A.C., who does not reside on an Indian reservation, is classified as an "Indian

child," and therefore the termination of parental rights and adoption in his state-court child-custody

case is governed by the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901–1963, and federal

regulations and guidelines promulgated thereunder.

4.      Because A.C. is classified as an Indian child—a definition based solely upon A.C.'s race, color, national origin, or political affiliation—his adoption by his stepfather Richard Fisher is subject to more burdensome and less protective rules than it would be if A.C. were of any other race, color, national origin, or political affiliation.

5.      Plaintiffs seek a declaration from the federal court that ICWA is not applicable and does not govern their state-court child-custody proceeding, and/or that if ICWA is applicable, then such application is unconstitutional. They also seek an injunction to stop Defendants from seeking application of ICWA in state court, and damages against Defendants for subjecting them to a separate set of rules under ICWA that discriminate against them on the basis of their race, color, or national origin.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343.

7.      Plaintiffs and Jason Cook all reside within the territorial limits of this federal judicial district.

8.      This Court is authorized to grant requested relief under 28 U.S.C. §§ 2201–2202, the All Writs Act, 28 U.S.C. § 1651, Federal Rules of Civil Procedure ("FRCP") 57 and 65, and the general and equitable powers of the federal judiciary.

9.      Venue is proper under 28 U.S.C. § 1391(b).

## THE PARTIES

10.      A.C., a minor child, is a citizen of the United States and the State of Arkansas and is domiciled in the State of Arkansas. He sues by and through Erin Fisher, his biological mother, who is his natural and general guardian, as his next friend under FRCP 17(c). He is identified by his initials under FRCP 5.2(a)(3).

11.    Erin Fisher is a citizen of the United States and the State of Arkansas and is domiciled in the State of Arkansas. She sues on behalf of herself and as an FRCP 17(c) next friend of A.C.

12.    Richard Fisher is a citizen of the United States and the State of Arkansas and is domiciled in the State of Arkansas. He sues on behalf of himself.

13.    Plaintiffs also sue on behalf of themselves as one family unit.

14.    A.C. is a registered member of the Cherokee Nation of Oklahoma (the "Tribe").

15.    Erin Fisher and Richard Fisher are not members of any federally-recognized Indian tribe and are not eligible for membership in any federally-recognized Indian tribe.

16.    Defendant Jason Cook is a citizen of the United States and the State of Arkansas and is domiciled in the State of Arkansas. Cook is the biological father of A.C. Cook is a registered member of the Tribe.

17.    Tara Katuk Mac Lean Sweeney, Acting Assistant Secretary—Indian Affairs, Bureau of Indian Affairs, is sued in her official capacity. She is tasked with enforcing federal law, and specifically federal Indian law, including ICWA, and ICWA regulations against Plaintiffs and federally-recognized Indian tribes, including the Cherokee Nation of Oklahoma. She is also designated in her official capacity as a fiduciary and trustee of federally-recognized Indian tribes, including the Cherokee Nation of Oklahoma.

18.    David Bernhardt, Acting Secretary of the Interior, is sued in his official capacity. He is tasked with enforcing federal law, and specifically federal Indian law, including ICWA, and ICWA regulations against Plaintiffs and federally-recognized Indian tribes, including the Cherokee Nation of Oklahoma. He is also designated in his official capacity as a fiduciary and trustee of federally-recognized Indian tribes, including the Cherokee Nation of Oklahoma.

19.     When the President appoints a Secretary of the Interior with the advice and consent of the Senate, the Secretary will be substituted in place of the Acting Secretary under FRCP 25(d). When the current Acting Assistant Secretary—Indian Affairs is replaced, the new Assistant Secretary will be substituted under FRCP 25(d).

20.     The Cherokee Nation of Oklahoma, a federally-recognized Indian tribe, is sued directly because, as A.C.'s tribe, it has invoked, and will in the future invoke, the challenged provisions against Plaintiffs in their state-court matter, and also because ICWA and ICWA regulations give the Tribe specific rights against the Plaintiffs, which state courts are obligated to implement and enforce in any state-court action for termination of Cook's parental rights and/or adoption of A.C. by Richard Fisher.

## FACTS COMMON TO ALL PARTIES AND CLAIMS

**I.      Erin Fisher And Jason Cook's Marriage And Divorce.**

21.     Erin Fisher married Jason Cook on September 25, 2004.

22.     Their child, A.C., was born on May 14, 2009.

23.     During the pregnancy, Jason Cook had little to no contact with Erin Fisher. He worked away from home and lived separately. He was absent from Erin Fisher's life and did not attend any doctor's appointments or checkups during the pregnancy.

24.     Before the pregnancy, Jason Cook commenced an extramarital affair. That affair continued after A.C. was born, until 2014.

25.     Erin Fisher and Jason Cook separated on November 26, 2010.

26.     Beginning with their separation in November 2010, Jason Cook did not financially support A.C. or Erin Fisher. Mrs. Fisher, who was then a full-time student in nursing school,

supported herself and A.C. by exhausting her savings. Jason terminated his employment in February of 2011 and did not regain employment to support A.C.

27.     Their divorce was granted in the Circuit Court of Sebastian County, Arkansas, Case No. DR-2011-446-F on August 3, 2011.

## II.     Jason Cook's Relationship With A.C.

28.     Although Jason Cook retained the right to visit A.C., he has to this date rarely exercised that right.

29.     Cook was permitted to visit A.C. every third weekend but seldom exercised that right until around December 2013.

30.     Between December 2013 and February 2016, contact between A.C. and Jason Cook was sporadic and extremely inconsistent. During that time, he was arrested and convicted of several drug-related crimes.

31.     In February 2016, an Arkansas state court entered an order changing Cook's visits to exclusively supervised visits to occur with Cook's mother serving as the supervisor at Cook's mother's house. That order also changed the visit schedule to every Wednesday evening for 4 hours, and every other Saturday for 5 hours. The order designated Erin Fisher to provide transportation to A.C. to and from each such visit.

32.     Under this order, Cook visited with A.C. only once, on March 12, 2016.

33.     Between March 2016 and August 2016, Cook either rescheduled visits or failed to visit A.C. On the rare occasions that Cook did visit, he was consistently late. Between March 2016 and August 2016, Cook canceled five visits and requested to reschedule multiple visits.

34.     On August 10, 2016, Erin Fisher drove A.C. for a scheduled supervised visit to Cook's mother's house, but Cook was not present.

35.     On August 17, 2016, Cook attended his last scheduled supervised visit with A.C. Cook canceled all subsequent supervised visits. No visits have occurred between that date and the present time—a period of more than two and a half years.

36.     In February 2016, Erin Fisher and A.C. were visited by a state social worker from the Arkansas Department of Human Services. Cook was adjudicated an unfit parent as to his other known child, born out of wedlock to the same person he had an affair with while Erin Fisher was pregnant with A.C. That child was adjudicated dependent and neglected as to Cook. Thus, the social worker visit with Cook's children was routine under the applicable state statutes and rules. The social worker interviewed A.C. and Erin Fisher during that visit.

37.     As further explained below, Cook was incarcerated from March 2017 to October 2018.

38.     Jason Cook has made no attempt to visit A.C. after his release from jail in October 2018.

39.     No other visits between Jason Cook and A.C. other than those mentioned in this complaint have occurred.

**III.     Jason Cook's Criminal History.**

40.     Jason Cook was arrested in Texas in December 2013 for possession of marijuana and paraphernalia, and was convicted and sentenced in June 2014 to community service. He was later found in contempt of court for failing to complete the terms of his sentence and was resentenced in March 2015.

41.     In September 2015, Cook was arrested in Arkansas for possessing Schedule IV/V controlled substances and paraphernalia.

42.     In January 2016, Cook was arrested in Arkansas for, among other charges, possessing Schedule I/II controlled substances, Schedule IV/V controlled substances, possession of methamphetamine with intent to deliver.

43.     In April 2016, Cook was arrested in Arkansas for contempt of court for failure to pay child support to Erin Fisher.

44.     In May 2016, Cook was arrested in Arkansas for domestic battery of his then-girlfriend. She did not file any charges against him, but the state court entered an order of protection for one year to protect Cook's girlfriend from further contact with Cook.

45.     In December 2016, Cook was arrested in Arkansas for theft of property from a Target store that occurred on July 16, 2016. He pleaded guilty in February 2017 and was sentenced to a one-year suspended sentence and ordered to pay a fine.

46.     On February 1, 2017, Cook was arrested in Arkansas for contempt of court for failure to pay child support and was released upon payment of bond.

47.     On February 8, 2017, Cook was arrested on a petition to revoke probation and was released upon payment of bond.

48.     On March 21, 2017, Cook was arrested in Fort Smith, Arkansas on the following charges: felony non-payment of child support, possession of methamphetamine and cocaine with paraphernalia, possession of paraphernalia, obstructing governmental operations, and failure to appear class D felony. He remained incarcerated until his sentencing in September 2017. Cook pleaded guilty and was sentenced on September 7, 2017.

49.     Cook was released from Arkansas Department of Corrections penal custody on October 2, 2018. But he was re-arrested on outstanding warrants for charges of non-payment of child support and sending harassing communications to another woman, not a party to this lawsuit.

On October 10, 2018, he was released from custody upon payment of a bond. Cook pleaded guilty to the harassing communications charge in December 2018 and received a one-year suspended sentence.

### IV. Richard Fisher's Relationship With Erin Fisher And A.C.

50. Richard Fisher began dating Erin Fisher in June 2012.

51. Richard Fisher was introduced to A.C. in June 2012. Their relationship flourished early on, as Richard would spend many hours playing trains and cars with A.C.

52. Richard Fisher is the only father that A.C. has ever known. Richard Fisher and A.C. have a steadfast father–child bond.

53. For example, Richard Fisher has been a father to A.C. through every major milestone in A.C.'s life. Richard Fisher saw A.C. off for his first day of 3-year-old preschool at Christ the King School on August 16, 2012.

54. Richard, Erin, and A.C. regularly attend tailgate parties at the house of Erin's brother and sister-in-law.

55. Richard, Erin, and A.C. celebrate all holidays together and take vacations together as any family would.

56. Richard, Erin, and A.C. also visit with Erin's and Richard's extended family for holidays.

57. On June 28, 2013, Erin Fisher and Richard Fisher were married. Richard, Erin, and A.C. celebrated the wedding of Richard and Erin with a week-long vacation to Panama City, Florida.

58.     Richard helped coach A.C.'s Little League baseball team throughout April of 2014. In 2014, Richard taught A.C. how to swim. A.C. has since competed in multiple swim meets in Arkansas. In 2015, Richard taught A.C. how to ride a horse.

59.     Richard takes an active interest in A.C.'s education. He helps him with school projects and homework.

60.     Richard and Erin had a son P.F. on June 2, 2016. A.C. and P.F. share a strong sibling bond.

## V.     Injuries Caused To Plaintiffs By Defendants That Are Redressable By Awarding The Requested Relief.

61.     Erin Fisher, Richard Fisher, A.C., and P.F. are a family in every respect, except that Richard Fisher is not legally recognized as A.C.'s father.

62.     Plaintiffs would like to terminate the parental rights of Jason Cook to A.C. and have Richard Fisher legally adopt A.C. as his own son. They have in the past attempted to do this in an action in Arkansas state court. However, any such action is subject to a separate set of laws, due solely to the fact that A.C. qualifies as an "Indian child" under ICWA.

63.     But for ICWA, termination of Jason Cook's parental rights and adoption of A.C. by Richard Fisher would be governed by Arkansas state law. But because A.C. is classified as an "Indian child" under ICWA, such termination and/or adoption is governed by ICWA, specifically, 25 U.S.C. §§ 1912(d), (f), 1915(a), and applicable federal regulations. Rules & Regs., Dep't of the Interior, Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38778 (2016) (codified at 25 C.F.R. pt. 23) ("2016 Regulations").

64.     These federal-law provisions impose restrictions and burdens on Plaintiffs' attempts to terminate Jason Cook's parental rights, and Richard Fisher's attempt to adopt A.C., in any state-court action. These restrictions and burdens are greater than those under Arkansas law.

These restrictions and burdens are imposed on Plaintiffs solely because A.C. is classified as an "Indian child." Erin Fisher, Richard Fisher, and A.C.'s private termination and stepparent adoption matter is treated differently based solely on their race, color, national origin, or political affiliation. The following paragraphs list some, but not all, of the separate and less-protective rules that apply to the parties solely as a consequence of the applicability of ICWA, and the 2016 Regulations. The application of these rules to the Plaintiffs deprives them of due process of law, of equal protection of the laws, and denies them the privileges and immunities enjoyed by citizens of the United States and of Arkansas.

65.     Under Arkansas law, a biological parent (Erin Fisher) initiating a termination-of-parental-rights proceeding against the other biological parent (Jason Cook) must prove statutory grounds for termination and that such termination is in the child's best interests. Ark. Code Ann. § 9-9-220. Both factors need only be demonstrated by clear and convincing evidence.

66.     ICWA and the 2016 Regulations, however, impose additional obligations in a termination-of-parental-rights proceeding for an "Indian child" beyond those created by Arkansas law. Under ICWA, the party seeking termination of parental rights (Erin Fisher) must prove, in addition to meeting the state-law requirements, that the party has taken "active efforts" to prevent the breakup of the Indian family and that these were unsuccessful. The party must prove this by clear and convincing evidence, including testimony of qualified expert witnesses. 25 U.S.C. §§ 1912(d), (f). Further, the initiating party (Erin Fisher) must prove beyond a reasonable doubt that continued custody of A.C. by Jason Cook is likely to result in serious emotional or physical damage to the child, also on the basis of testimony by expert witnesses. 25 U.S.C. § 1912(f).

67.     Under Arkansas law, no efforts to reunify Cook with A.C. are needed because Cook has met the normal standards imposed under Arkansas law to be held as having "abandoned" A.C.

because he has failed to support or maintain regular contact with A.C. for more than one year. Ark. Code Ann. §§ 9-9-220(c)(1), 9-27-341(b)(3)(B)(ix)(a).

68.    Because A.C. is an "Indian child," however, the usual standards of Arkansas law to terminate parental rights are not enough. Instead, under ICWA, Erin Fisher needs to prove she took "active efforts" to avoid such a termination over an indefinite period until it can be proved that such efforts have been unsuccessful. No exception from the ICWA active-efforts provision is available when aggravated circumstances such as abandonment are present.

69.    If Arkansas law applied to Plaintiffs, consent to adoption would not be required from Jason Cook because A.C. is in the custody of his mother, and because for a period of one year Jason Cook "has failed significantly without justifiable cause (i) to communicate with [A.C.] or (ii) to provide for the care and support of [A.C.] as required by law or judicial decree." Ark. Code Ann. § 9-9-207(a)(2). The one-year period does not have to be immediately before the filing of the petition for adoption. But because Plaintiffs are subject to ICWA and the 2016 Regulations, they are required to satisfy ICWA §§ 1912(d), (f), in state court before Richard Fisher can adopt A.C.

70.    Moreover, under Arkansas law, once a parent's rights are terminated, that termination is final. But because A.C. is an "Indian child," a termination of Jason Cook's rights would not be final. For two years after such termination, Jason Cook, or the Tribe can seek to invalidate the termination of Jason Cook's parental rights. 25 U.S.C. § 1914. Thus, even if a state court terminates Jason Cook's parental rights under Arkansas law, ICWA allows Cook and/or the Tribe to seek to invalidate that termination "upon a showing that such action violated … section[] 1912, [or] 1913," 25 U.S.C. § 1914, specifically, the active-efforts and termination-burden provisions, 25 U.S.C. §§ 1912(d), (f).

71.    Under Arkansas law, Richard Fisher's stepparent adoption would be routine and would require no further proof other than the consent of his wife, Erin Fisher. Ark. Code Ann. § 9-9-204(4)(i). But under ICWA, stepparent adoptions are governed by 25 U.S.C. § 1915(a), which requires the Plaintiffs to show good cause exists to deviate from ICWA's statutory placement preferences.

72.    Under Arkansas law, there is a meaningful and express difference between state-initiated termination-of-parental-rights and foster-parent-adoption proceedings on the one hand and private termination-of-parental-rights and stepparent-adoption proceedings on the other. *Compare* Ark. Code Ann. § 9-27-341 *with id.* §§ 9-9-204, 9-9-220. But ICWA §§ 1912(d), (f), 1915(a) do not provide the same meaningful and express distinction. Thus, A.C., Erin, and Richard Fisher, who would have obtained the protection of Arkansas state law's private-proceeding provisions but for A.C.'s "Indian child" designation, instead are subject to the provisions of ICWA and the 2016 Regulations.

73.    If ICWA and the 2016 Regulations govern Plaintiffs' private termination and stepparent adoption matter, they will be subject to and have to undergo a process that is more burdensome and less protective of their rights than corresponding Arkansas state law.

74.    Even if this Court were to decide that ICWA provisions are inapplicable to Plaintiffs (or if the Plaintiffs and Cook were to voluntarily agree that Cook will voluntarily relinquish his parental rights to A.C. under either ICWA, 25 U.S.C. § 1913, or corresponding Arkansas state law, Ark. Code Ann. § 9-9-220), Plaintiffs will remain subject to ICWA because the Tribe has standing to seek reversal of such termination under ICWA's invalidation provision, 25 U.S.C. § 1914, for two years after Cook's rights are terminated or relinquished. None of these burdens would exist except for A.C.'s classification as an "Indian child."

75. Plaintiffs, thus, are directly injured by Defendants' actions under ICWA and the 2016 Regulations because A.C. is classified as an "Indian child" and thereby their private termination and stepparent adoption matter is governed by and will proceed in state court under ICWA. Plaintiffs' injury will continue for at least two years after Jason Cook's parental rights to A.C. are terminated.

76. Erin Fisher is injured by Defendants' actions under ICWA and the 2016 Regulations because, among other injuries, she is required to undergo additional burdens and proffer additional proof under the more burdensome standards of ICWA §§ 1912(d), (f), 1915(a), and the 2016 Regulations, than she would need if her case were governed by Arkansas state law. Richard Fisher and A.C. also suffer the same injury.

77. Richard Fisher is injured by Defendants' actions under ICWA and the 2016 Regulations because, even though he considers himself A.C.'s father and A.C. considers him his father, he is not legally recognized as A.C.'s father, and will be unable to obtain such final, nonreviewable recognition for two years after Jason Cook's parental rights to A.C. are terminated. Erin Fisher and A.C. also suffer the same injury because they are not legally recognized as one family until Richard Fisher obtains final, nonreviewable adoption of A.C.

78. A.C. has suffered emotional trauma caused by Defendants' actions under ICWA and the 2016 Regulations because his family is not recognized as a family in the eyes of the law. A.C., who is almost ten years old, has clearly expressed his desire to end his relationship with Jason Cook and to be adopted by Richard Fisher. Erin and Richard Fisher also suffer the same injury.

79. Plaintiffs, if ICWA and the 2016 Regulations govern, will have to undergo state-court proceedings that will cost significantly more in time and money than what it would cost them

for the same matter if it were governed by Arkansas state law instead of ICWA. The costs of proffering testimony from expert witnesses, meeting the active-efforts requirement, responding to Jason Cook's and the Tribe's propounded discovery, motions, and ultimately undergoing a more onerous trial, are many times greater than the cost of a contested termination and consented-to stepparent adoption under Arkansas law.

80.     If ICWA and the 2016 Regulations govern, Plaintiffs will continue to suffer emotional, psychological, physical trauma, and a sense of uncertainty and inferiority for two years after Cook's rights are terminated. Plaintiffs are presently and will continue to be deprived of the dignity, stability, and permanency that only legal, irrevocable recognition of their family can provide. Such recognition can only be obtained upon finalizing Richard Fisher's adoption of A.C.

81.     To meet the active-efforts and termination-burden provisions, 25 U.S.C. §§ 1912(d), (f), Erin Fisher and A.C. are now and will continue to be forced to visit with Jason Cook, who has been absent from their lives, and is a stranger to A.C. To satisfy these provisions, Richard Fisher is presently and will continue to be forced to suffer emotional, psychological, physical trauma, insofar as he will be required to see his wife Erin and son A.C. have to undergo such visitation for an indefinite period in the future only so they can prove active efforts were unsuccessful.

82.     To be required to meet the 25 U.S.C. § 1915(a) "good cause" standard would constitute a substantial burden and harm to Erin Fisher, A.C., and Richard Fisher. It is an injury to them as individuals and to their family, and the stigma of the discriminatory child-custody proceedings is present in all of their interactions with relatives and friends. This is an unconstitutional deprivation of Plaintiffs' dignity, stability, and permanency, and an imposition of a badge of inferiority on Plaintiffs. Its ill effects will continue to linger and will be hard to

overcome even two years after Jason Cook's rights are terminated and Richard Fisher's adoption of A.C. is finalized. The race-, color-, national-origin-, or political-affiliation-based steering and conformity imposed on Erin Fisher, Richard Fisher, and A.C. is inherently hurtful and injurious to each of them both individually and as a family unit.

## VI. Prior Application Of ICWA.

83. Plaintiffs filed a state court petition to terminate Jason Cook's parental rights to A.C. and a petition to finalize Richard Fisher's adoption of A.C. But the Tribe and Jason Cook invoked the provisions of ICWA that are challenged here and sought enforcement of those provisions against Plaintiffs. The state court concluded that ICWA applied to the Plaintiffs' termination and adoption petitions. Plaintiffs had no legal avenue to seek a determination of the inapplicability and/or unconstitutionality of ICWA *before* they were required to comply with the very provisions they challenge as inapplicable or unconstitutional to their private termination and stepparent adoption matter. Consequently, Plaintiffs voluntarily dismissed their state-court termination and adoption petitions without prejudice in order to seek declaratory, injunctive and monetary relief in federal court.

84. Plaintiffs intend to seek termination of parental rights and adoption as described above in a future state court action. Plaintiffs allege that defendants Jason Cook and the Tribe will, unless enjoined by this Court, again invoke ICWA and move for enforcement of its provisions, as described above, against Plaintiffs in such a suit. Plaintiffs therefore face inevitable and imminent injury at the hands of Defendants as set forth herein.

85. Plaintiffs' injuries also encompass the costs and fees they expended in filing and voluntarily dismissing the state-court petitions for termination and stepparent adoption, including costs and fees of responding to Jason Cook's and the Tribe's demands to comply with the

provisions of ICWA and the 2016 Regulations challenged here. They are also damaged to the extent that these demands infringed on and violated their fundamental rights, for which they seek monetary relief, including compensatory and punitive damages, for physical, psychological, emotional and other injuries to their family integrity, family autonomy, and dignity that Jason Cook and A.C.'s tribe caused them.

86.     All of Plaintiffs' injuries are caused by Defendant Cook and/or the Tribe invoking ICWA, 25 U.S.C. §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations. Jason Cook and the Tribe will surely, certainly, and inexorably invoke these sections in Plaintiffs' state-court matter because A.C. is classified as an "Indian child." They already did so in the state-court action that Plaintiffs voluntarily dismissed without prejudice.

87.     Even if Jason Cook agrees to relinquish his parental rights voluntarily, the Tribe has standing to seek invalidation of such termination for two years after that and the Tribe will surely, certainly, and inexorably do so. 25 U.S.C. § 1914.

88.     Even if Plaintiffs, Cook, and the Tribe voluntarily enter into an agreement that neither Cook nor the Tribe will insist that ICWA should govern their private termination and stepparent adoption matter, there is no way for Plaintiffs to enforce such a contract against the Tribe absent congressional abrogation or tribal waiver of the Tribe's immunity.

89.     The federal Defendants, Secretary of the Interior and Assistant Secretary—Indian Affairs, who are tasked with enforcing federal Indian law and ICWA, and who are designated as fiduciaries and trustees of the Tribe, have not abrogated the Tribe's immunity, nor will they do so in the future. The federal Defendants' action or inaction taken under color of law leaves Plaintiffs no avenue to seek and ensure the Tribe's agreement that ICWA does not govern and will not be invoked by the Tribe against Plaintiffs. Federal Defendants' action or inaction makes it impossible

for Plaintiffs and the Tribe to enter into and seek enforcement of any meaningful voluntary agreement to that effect. Plaintiffs, therefore, are left with no option but to seek redress of their injuries in federal court against federal Defendants sued in their official capacity under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Unnamed Federal Narcotics Agents*, 403 U.S. 388 (1971) . Plaintiffs' injuries, therefore, are caused by the action or inaction of the federal Defendants taken under color of law and redressable by awarding the requested relief.

90.     Plaintiffs have no plain, speedy, adequate remedy available at law other than declaratory, injunctive, and monetary relief in this Court. Plaintiffs have suffered, now suffer, and absent an award of the requested relief by this Court, will continue to suffer irreparable injuries caused by Defendants' enforcement and implementation of the challenged provisions of ICWA.

**COUNT I:**
**FIFTH AND FOURTEENETH AMENDMENT EQUAL PROTECTION CLAUSES**

91.     Plaintiffs incorporate the preceding paragraphs as though fully set forth here.

92.     Congress enacted ICWA specifically to address the problem of "removal, often unwarranted, of [Indian] children by *nontribal public and private agencies* and [their] place[ment] in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4) (emphasis added). That concern is absent in a privately-initiated termination proceeding. In such private proceedings, there is no risk of the sorts of abuses ICWA was meant to prevent and remedy.

93.     ICWA and the 2016 Regulations cannot and should not apply in this case. ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, were not designed to apply to a private termination and stepparent adoption matter such as Plaintiffs' situation, where a state child-protective-services agency has not removed, nor does it have cause to remove, A.C. from the custody of Erin Fisher (A.C.'s biological parent) and sought his placement in a non-Indian foster home, adoptive home, or institution. But for the application of these discriminatory, demeaning

mandates of the challenged provisions, Plaintiffs would be provided equal treatment under law if Arkansas state law governed their private termination and stepparent adoption matter in the same manner and to the same extent that it governs such matters of all children who are not classified as "Indian."

94.     If these sections are applied in a private action like that Plaintiffs wish to pursue, such application treats Plaintiffs differently from other United States and Arkansas citizens and domiciliaries based solely on the fact that A.C. is classified an "Indian child," which in turn is based solely on his race, color, national origin, or political affiliation. Affording such differential treatment deprives Plaintiffs of the equal protection of the law, and protection of equal laws, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

95.     If these sections are applied to Plaintiffs, such application will be based on their race, color, national origin, or political affiliation, and will need to satisfy strict scrutiny under Supreme Court precedent.

96.     Plaintiffs have no plain, speedy, adequate remedy available at law other than declaratory, injunctive, and monetary relief in this Court. Plaintiffs have suffered, now suffer, and will continue to suffer irreparable injuries caused by Defendants' enforcement and implementation of the challenged provisions of ICWA.

## COUNT II:
### FIFTH AND FOURTEENETH AMENDMENT DUE PROCESS CLAUSES, AND FOURTEENTH AMENDMENT PRIVILEGES OR IMMUNITIES CLAUSE

97.     Plaintiffs incorporate the preceding paragraphs as though fully set forth here.

98.     Erin Fisher, A.C.'s biological and custodial parent, has the fundamental right to direct the upbringing of A.C. A fit parent's judgment in bringing up her child is afforded special weight under established substantive due process precedent. Erin Fisher has this substantive right

that is infringed upon by the application of ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, which supersede her rights as a fit parent with the rights of an unfit parent like Jason Cook, and the Tribe, which absent the challenged statute, has no right to interfere in a purely private family dispute like this one. Plaintiffs' right exists regardless of distinctions that can be drawn based on the race, color, national origin, or political affiliations of A.C., Erin Fisher, or Richard Fisher.

99.     Richard Fisher, A.C.'s *de facto* father, has a fundamental right to direct the upbringing of A.C. A fit *de facto* parent's judgment in bringing up his child is afforded special weight under established substantive due process precedent. Richard Fisher has this substantive right that is infringed upon by the application of ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, which supersede his rights as a fit parent with the rights of an unfit parent like Jason Cook, and the Tribe, which absent the challenged statute, has no right to interfere in a purely private family dispute like this one. Plaintiffs' right exists regardless of distinctions that can be drawn based on the race, color, national origin, or political affiliations of A.C., Erin Fisher, or Richard Fisher.

100.    Richard and Erin Fisher also have the substantive right to obtain legal recognition and dignity for their family by finalizing A.C.'s adoption by Richard Fisher. Plaintiffs will surely seek such legal recognition and dignity for their family under Arkansas state law, but will not undergo the discriminatory, demeaning mandates of the challenged statute. But for the challenged law, and/or if this court declares that it is inapplicable or unconstitutional, Plaintiffs are willing and able to seek legal recognition and dignity for their family that is available under Arkansas state law. Their right to family integrity, family autonomy, and dignity is infringed upon by the application of ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, because these

provisions supplant their rights with the rights of an unfit parent like Jason Cook, and the Tribe, which absent the challenged statute, has no right to interfere in a purely private family dispute like this one. Plaintiffs' right exists regardless of distinctions that can be drawn based on the race, color, national origin, or political affiliations of A.C., Erin Fisher, or Richard Fisher.

101. A.C. has a substantive fundamental right to establish family associations and maintain existing family associations, as he chooses and as fit parents like Erin and Richard Fisher desire. Erin and Richard Fisher also have the same fundamental right. A.C. has little if any existing association with Jason Cook yet is being forced to attempt to maintain a "relationship" with a biological father that has no interest in maintaining a relationship with him. His right to family integrity, family autonomy, to establish family associations, to maintain existing family associations, and to the dignity of legal recognition of his family is infringed upon by the application of ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations. Absent such application, A.C.'s rights would not be superseded by the rights of an unfit parent like Jason Cook, and the Tribe, which absent the challenged statute, has no right to interfere in a purely private family dispute like this one. A.C.'s rights exist regardless of distinctions that can be drawn based on the race, color, national origin, or political affiliations of A.C., Erin Fisher, or Richard Fisher.

102. Plaintiffs, A.C., Erin Fisher, and Richard Fisher have other unenumerated fundamental rights, privileges and immunities under established precedent. The allegations contained herein are not intended to be an exhaustive list of fundamental rights, privileges, and immunities that they as individuals and as a family unit possess. The challenged statute, ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, supplant such rights with those of an unfit parent like Jason Cook, and of the Tribe, which absent the challenged statute, has no right to interfere in a purely private family dispute like this one. Plaintiffs' unenumerated fundamental

rights, privileges, and immunities as individuals and as a family unit exist regardless of distinctions that can be drawn based on the race, color, national origin, or political affiliations of A.C., Erin Fisher, or Richard Fisher.

103.     Such fundamental rights are fully protected under the substantive due process component of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and the Privileges or Immunities Clause of the Fourteenth Amendment, and are strictly scrutinized thereunder.

104.     Plaintiffs have no plain, speedy, adequate remedy available at law other than declaratory, injunctive, and monetary relief in this Court. Plaintiffs have suffered, now suffer, and will continue to suffer irreparable injuries caused by Defendants' enforcement and implementation of the challenged provisions of ICWA.

WHEREFORE, for the foregoing reasons, Plaintiffs request relief as follows:

A.     Declare that ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, do not apply in purely private actions for termination of parental rights and stepparent adoptions like this one, and/or that such application is unconstitutional under the Equal Protection and Due Process provisions of the Fifth and Fourteenth Amendments to the United States Constitution, and the Privileges or Immunities Clause of the Fourteenth Amendment;

B.     Permanently enjoin Defendant Jason Cook from invoking ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, against Plaintiffs in their private termination and stepparent adoption matter;

C.     Permanently enjoin and mandate federal Defendants as enforcers of ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, and as fiduciaries and trustees of A.C.'s

tribe, to constrain A.C.'s tribe from invoking these provisions in the private termination and stepparent adoption matter of Plaintiffs under 42 U.S.C. § 1983, and *Bivens*, *supra*;

D.      Permanently enjoin and mandate the Cherokee Nation of Oklahoma from invoking ICWA §§ 1912(d), (f), 1914, 1915(a), and the 2016 Regulations, against Plaintiffs in their private termination and stepparent adoption matter;

E.      Award monetary damages, including punitive and compensatory damages, to Plaintiffs in an amount to be determined by the fact-finder;

F.      Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with law, including 42 U.S.C. § 1988, the Equal Access to Justice Act, and other applicable federal statutes; and

G.      Order such additional relief as may be just and proper.

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
cpekron@qgtlaw.com
bford@qgtlaw.com


By: Chad W. Pekron
    Chad W. Pekron (Ark. Bar No. 2008144)
    Brittany S. Ford (Ark. Bar No. 2018102)

Keith Morrison (Ark. Bar No. 84210)
WILSON & ASSOCIATES
One East Center Street, Suite 310
Fayetteville, Arkansas 72701
Telephone: (479) 521-5820
Facsimile: (479) 521-5543
kmorrison@TheWilsonLawFirm.com

-and-

Aditya Dynar (*Pro Hac Forthcoming*)
Arizona Bar No. 031583
Scharf-Norton Center for
Constitutional Litigation at the
GOLDWATER INSTITUTE
500 East Coronado Road
Phoenix, Arizona 85004
Telephone: (602) 462-5000
Facsimile: (602) 256-7045
adynar@goldwaterinstitute.org

*Attorneys for Plaintiffs*